STATE OF MISSOURI, Respondent, v. JACK ESLINGER, Appellant, No. 42143—238 S. W. (2d) 424.

Division Two, February 12, 1951.

Rehearing Denied, March 12, 1951.

Motion to Transfer to Banc Overruled, April 9, 1951.

*Paul E. Carver* for appellant.

*J. E. Taylor,* Attorney General, and *Walter G. Stillwell,* Assistant Attorney General, for respondent.

[424] TIPTON, J.—An information was filed in the circuit court of Newton County, Missouri, charging the appellant with stealing cattle. A change of venue was granted and the cause was sent to the circuit court of Lawrence County where the appellant was convicted of grand larceny and his punishment fixed at two years in the state penitentiary.

Appellant's first assignment of error is that the information is fatally defective and will not sustain a judgment because it does not allege that the taking was done feloniously.

The essential parts of the information are "that Jack Eslinger on the 14th day of June, 1948, at the said County of Newton, did then and there unlawfully certain goods, chattels, and personal property to-wit: A brownish red Jersey calf, 4 months old, of the value of $50.00, and a pale red steer, 2 years old, of the value of $50.00 of the total value of $100.00 of the goods and personal property of one Kenneth Boyer, then and there being did take, steal and carry away, against the peace and dignity of the State."

Section 560.155 of the Revised Statutes of 1949 defines grand larceny as follows: "Every person who shall be convicted of feloniously stealing, taking and carrying away any money, goods, rights in action, or other personal property, or valuable thing whatsoever of the value of thirty dollars or more, or any horse, mare, gelding, colt, filly, ass, mule, sheep, goat, hog or neat cattle, belonging to another, shall be deemed guilty of grand larceny; and dogs shall for all purposes of this chapter be considered personal property."

It is to be noted that this statutory definition requires the stealing to be feloniously done.

In the case of State v. Bennett, 297 Mo. 190, 248 S. W. 924, we held an information was fatally defective that failed to allege that the property described therein was feloniously stolen.

In State v. Pryor, 342 Mo. 951, 119 S. W. 253, the cases of this state are reviewed and in that case we held that "the word 'feloniously' is indispensably necessary in all indictments for felony," except in cases involving the violation of the intoxicating liquor statutes. This for the reason that "no such word as feloniously, unlawfully, or knowingly is used in the [liquor statute] section. The act of selling is made a felony regardless of the purpose or manner of the act."

"As a general rule the act constituting a crime must be characterized and alleged to have been done 'feloniously.' The [425] characterization is indispensable in common law crimes and crimes requiring a felonious intent or crimes so characterized or described by statute, such as grand larceny or burglary and larceny. State v. Pryor, 342 Mo. 951, 119 S. W. 2d 253; State v. Bennett, 297 Mo. 190, 248 S. W. 924. 'Feloniously' or words of similar import (State v. Nienaber, 347 Mo. 615, 148 S. W. 2d 1024) are necessary when without the magic words the acts describe a misdemeanor rather than a felony as in many

instances of felonious assault. State v. Null, 355 Mo. 1034, 199 S. W. 2d 639. The characterization is necessary in certain statutory crimes which require that the act be knowingly, wilfully or fraudulently done as knowingly casting more than one ballot or making a false count and return in an election. State v. Siegel, 265 Mo. 239, 177 S. W. 353; State v. McGrath, 228 Mo. 413, 128 S. W. 966. In the Liquor Control Act the offense of selling intoxicating liquor without a license is declared a felony but the word is not used to characterize the offense. The mere violation or act of selling intoxicating liquor without a license is made a felony regardless of the purpose, manner or intent of the act. The violation of the statute in and of itself constitutes a felony.'' State v. Updegraff, 214 S. W. 2d 22, l. c. 24.

Our grand larceny statute requires the stealing to be done feloniously and, therefore, under the authorities above cited this information is fatally defective.

Defects in the information may be raised for the first time in this court; in fact, it is our duty to examine the record proper. State v. Jeffords, 64 S. W. 2d 241.

■ Appellant's other assignment of error is that the evidence is insufficient to support the jury's verdict.

The evidence on behalf of the state tended to prove that the prosecuting witness, Kenneth Boyer, lived on a farm near Neosho in Newton County; that on or about June 14, 1948, two head of his cattle, a brownish red Jersey calf and a pale red steer about 2 years old, were stolen from his farm. He had seen these two head of cattle on his farm on Sunday before he missed them on the following Tuesday. He reported the theft to the sheriff's office. About two weeks later he saw the calf at Morris Park near the city of Neosho. He testified that the reasonable value of the calf was $50.00. He also testified that the appellant had been to his farm prior to the time of the theft of the calf.

Charlie Smith testified that at the time of the alleged theft he worked for appellant on his farm in McDonald County; that he and appellant lived on this farm; that on a Monday night about June 14th appellant and Jim Surridge came to appellant's farm after he, Smith, had retired; that he unlocked the door and let them in; that the next morning he saw a strange calf among appellant's cattle; and that it was the same calf he saw about two weeks later at Morris Park and later at the Boyer farm. He also testified that he worked for appellant from May 5, 1948 to July 28, 1948.

On cross-examination it was shown that Smith had a law suit pending against appellant for alleged unpaid wages; that about two weeks before Smith quit working for appellant that appellant went to Oklahoma; and that the night appellant and Surridge came to the farm together they came in a truck and appellant had left his car in town.

The defense was an alibi. Appellant sought to show that Smith had on several occasions been arrested and that Smith's reputation for veracity was bad. Appellant also introduced in evidence an affidavit Smith made in Oklahoma to the effect that appellant did not steal the calf but that the reason he stated appellant stole it was because the officer threatened him with the prosecution if he did not so testify.

In rebuttal Smith testified that he had not been threatened.

The appellant's main attack on the state's evidence is that Smith had been so thoroughly impeached that his testimony could not be considered. With this we do not agree. Under this record we think the [426] question of Smith's veracity was for the jury and, of course, the jury had a right to disbelieve appellant's evidence that tended to prove an alibi.

From these facts and circumstances, the jury had a right to infer that appellant and Jim Surridge stole the calf from the farm of Kenneth Boyer. The trial court properly refused appellant's request for a directed verdict. State v. Smith, 354 Mo. 1088, 193 S. W. 2d 499.

Since the information is not sufficient to support the judgment, it should be reversed and the cause remanded. It is so ordered. All concur.